IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAIIAN AIRLINES, INC.,<br>a Delaware corporation, | ) | CIVIL NO. 06-00154 HG-BMK |
| | ) | |
| | ) | D. Hawaii Bankr. Case No. |
| Plaintiff and | ) | 03-00817 (Chapter 11) |
| Counterclaim | ) | |
| Defendant, | ) | D. Hawaii Bankr. Adv. No. |
| | ) | 06-90026 |
| vs. | ) | |
| | ) | **ORDER DENYING MOTION TO** |
| MESA AIR GROUP, INC., | ) | **WITHDRAW THE REFERENCE** |
| a Nevada corporation | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim | ) | |
| Plaintiff. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO WITHDRAW THE REFERENCE**

Hawaiian Airlines, Inc. ("HAL") brought an adversary proceeding against Mesa Air Group, Inc. ("Mesa") in the United States Bankruptcy Court for the District of Hawaii. In its complaint, HAL alleges that Mesa breached a confidentiality agreement entered into in connection with the bankruptcy reorganization and seeks return of certain confidential information under 11 U.S.C. § 542(a). Mesa filed a counterclaim alleging that HAL has an unlawful monopoly on the Hawaiian inter-island jet air transportation market and that the adversary proceeding is a sham lawsuit intended to prevent Mesa from operating a competing airline in violation of antitrust and unfair competition laws.

Mesa filed a motion to withdraw the reference, requesting

that this Court adjudicate the complaint and counterclaim.

For the reasons that follow, Mesa's Motion to Withdraw the Reference is DENIED.

## PROCEDURAL HISTORY

On March 16, 2006, Mesa filed a Motion to Withdraw the Reference ("Motion", Doc. 1.)

On April 27, 2006, HAL filed its Opposition to Motion to Withdraw the Reference ("Opposition", Doc. 5.)

On May 4, 2006, Mesa filed its Reply in Support of Motion to Withdraw Reference ("Reply", Doc. 6.)

On May 15, 2006, this matter came on for hearing.

At the hearing, the Court DENIED the Motion.  This Order sets forth the Court's basis for denial.

## BACKGROUND

On March 21, 2003, Plaintiff Hawaiian Airlines, Inc. ("HAL"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii (Case No. 03-00817).  On May 18, 2005, the bankruptcy court entered an order confirming the Third Amended Joint Plan of Reorganization of Joshua Gotbaum, as Chapter 11 Trustee for Hawaiian Airlines, Inc., the Official Committee of Unsecured Creditors, HHIC, Inc., Hawaiian Holdings, Inc., and RC Aviation LLC, dated as of March 11, 2005 (the "Plan").  The Plan's Effective Date occurred on June 2, 2005.  The bankruptcy

2

case has not been closed and remains pending.

As part of HAL's Chapter 11 plan of reorganization, the bankruptcy court entered an Order Implementing Competing Plan and Discovery Procedure on April 7, 2004.  (Motion at Exhibit A ("Complaint") at Exhibit 1 ("Plan Procedures Order").)  The Plan Procedures Order addressed the procedures for "Qualified Proponents" to invest in HAL through a Chapter 11 reorganization plan.  To evaluate the investment opportunity, Qualified Proponents were given access to certain proprietary and confidential information belonging to HAL.  Under the Plan Procedures Order every Qualified Proponent was required, as a condition to obtaining HAL's confidential information, to enter into a Confidentiality Agreement with HAL's Chapter 11 trustee, Joshua Gotbaum ("Trustee"), the form of which was attached to the Plan Procedures Order.

Pursuant to the Plan Procedures Order, Mesa Air Group, Inc. ("Mesa") entered into a Confidentiality Agreement with the Trustee, dated March 22, 2004.  (Complaint at Exhibit 2, ("Confidentiality Agreement")).  After execution of the Confidentiality Agreement, Mesa was able to access a secured website containing HAL's confidential information.  The Confidentiality Agreement provided that "[t]he Parties signing this Agreement hereby submit to the exclusive jurisdiction and venue of the Bankruptcy Court for the purpose of enforcing and

3

interpreting this Agreement."  (Confidentiality Agreement at ¶ 20.)  Each time Mesa accessed the website, it also agreed that it was "subject to the jurisdiction of the United States Bankruptcy Court for the District of Hawaii."  (Complaint at Exhibit 5.) The Plan Procedures Order likewise expressly provides for the bankruptcy court to "retain[] jurisdiction to interpret and enforce the provisions of this Order and to resolve any disputes arising out of the various rights and obligations set forth in this Order."

On February 13, 2006, HAL commenced an adversary proceeding in the bankruptcy court by filing a Complaint for Injunctive Relief, Specific Performance, and Damages ("Complaint").  Count 1 of HAL's Complaint alleges that Mesa breached the Confidentiality Agreement by, among other things, misusing HAL's highly proprietary material to obtain a competitive advantage in the inter-island Hawaiian air market and by failing to return or destroy confidential material.  (Complaint at ¶ 44.)  Count 2 of HAL's Complaint seeks return of the confidential information pursuant to 11 U.S.C. § 542(a).  (Complaint at ¶ 48.)

On March 16, 2006, Mesa answered and filed a Counterclaim for Damages and Injunctive Relief for Violations of Antitrust Laws and State Law Claims.  (Motion at Exhibit C, "Counterclaim".)  Mesa's Counterclaim alleges that HAL has unlawfully monopolized the inter-island jet airline

transportation market.  Mesa further alleges that HAL's Complaint is a sham, containing patently false allegations to block Mesa's entry into the inter-island jet airline transportation market in violation of the Sherman Act, 15 U.S.C. § 2.  In particular, Mesa contends that HAL's Complaint is a sham lawsuit that is grounded in false allegations of Mesa's misuse of confidential information and that is being used as an anti-competitive weapon to delay, hinder, and interfere with Mesa's entry into the inter-island jet air transportation market. (Counterclaim at ¶ 8.)   Mesa also alleges that HAL's conduct constitutes intentional interference with prospective economic advantage (Count 2) and unfair trade practices in violation of Haw. Rev. Stat. § 480-2 (Count 3). Mesa has demanded a jury trial on all claims.

Mesa has moved to withdraw the reference of the lawsuit to the bankruptcy court so that it may be heard in this Court.

## STANDARD OF REVIEW

Title 28, Section 157(b)(1) of the United States Code provides bankruptcy judges with jurisdiction to hear and determine all cases brought under title 11 of the Bankruptcy Code and all core proceedings[1] arising under title 11, or arising in a

___

[1] Although § 157 does not define "core" and "non-core" proceedings, § 157(b)(2) sets forth a non-exhaustive list of core proceedings, some of which are discussed in this Order.  The section does not define or contain examples of "non-core" proceedings.  The United States Court of Appeals for the Ninth Circuit has characterized as "non-core" proceedings, matters which do not depend on the Bankruptcy Code for their existence,

case brought under Title 11, referred to the bankruptcy court pursuant to § 157(a).  Section 157(b)(1) further authorizes bankruptcy judges to enter appropriate orders and judgments with respect to Title 11 cases and core proceedings, subject to review by the district court under § 158.  Bankruptcy judges also may hear non-core proceedings, which are otherwise related to a case brought under Title 11.  28 U.S.C. § 157(c)(1).  With respect to such non-core proceedings, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, which, upon a timely and specific objection by any party, are subject to de novo review.  Id.  Any final order or judgment regarding any non-core proceedings heard by a bankruptcy judge must be entered by a district judge.  Id.

Local Bankruptcy Rule 1070-1(a) of the United States District Court for the District of Hawaii provides that, pursuant to 28 U.S.C. § 157(a), all civil proceedings arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district.  This Court, sua sponte or upon a timely motion of any party demonstrating cause, may withdraw in whole or in part, such a reference of a case or proceeding to the bankruptcy court.  28 U.S.C. § 157(d).

---

and which could proceed in another court.  Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir. 2004) (citing Security Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997)).

A litigant who believes that a certain proceeding or portion of a proceeding pending in the bankruptcy court should be litigated in the district court may make a motion to withdraw the reference.  The motion to withdraw the reference is to be heard by the district court.  Fed. R. Bankr. P. 5011(a).  The party moving for withdrawal of the reference has the burden of persuasion.  See In re First Alliance Mortg. Co., 282 B.R. 894, 902 (C.D. Cal. 2001).

## ANALYSIS

I.   **The Bankruptcy Court Has Jurisdiction Over HAL's Claims for Breach of the Confidentiality Agreement and for Turnover of Property Under 11 U.S.C. § 542(a) As Core Proceedings**

   A.   **Breach of Confidentiality Agreement (Count 1) Is a Core Proceeding**

The law is clear that "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."  See Petrie Retail, Inc. v. Franklin 145 Corp., (In re Petrie Retail, Inc.), 304 F.3d 223, 230  (2nd Cir. 2002) (citations omitted); see also Valdez Fisheries Development Association, Inc. v. State of Alaska (In re Valdez Fisheries), 439 F.3d 545, 549 (9th Cir. 2006) (court may maintain jurisdiction to enable a court to vindicate its authority and effectuate its decrees) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)).

7

As discussed above, in the bankruptcy context, the law distinguishes between core and non-core proceedings.  Proceedings either arising under title 11 or arising in a case under title 11 are core proceedings.  A case "'arising under title 11'" means essentially the cause of action is created by title 11 or that the right to relief necessarily depends upon resolution of a substantial question of bankruptcy law."  Diagnostic Int'l, Inc. v. Aerobic Life Products Co. (In re Diagnostic Int'l), 257 B.R. 511, 514 (Bankr. D. Ariz. 2000) (citing Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1076 (9th Cir. 1991)(further citations omitted)).

A post-confirmation proceeding involving a bankruptcy court's enforcement of its own order is a core proceeding.  See Insurance Company of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (Matter of National Gypsum Co.), 118 F.3d 1056, 1063 (5th Cir. 1997) (post-confirmation actions to enforce discharge injunction are core proceedings "because they call on the bankruptcy court to construe and enforce its own orders"); C.F. Trust, Inc. v. Tyler, 318 B.R. 795, 803-04 (E.D. Va. 2004) (post-confirmation motion to interpret and enforce a release agreement which was related to the plan or reorganization found to be core matter).

The Plan Procedures Order involved the administration of the bankruptcy estate and the reorganization of the assets of the

estate.  Matters concerning the administration of the bankruptcy
estate are core proceedings under 28 U.S.C. § 157(b)(2)(A) and §
157(b)(2)(O).  Even if the bankruptcy court has already approved
the reorganization plan, the bankruptcy court can expressly
retain jurisdiction to enforce its own orders that related to the
administration of the estate.

In Arnold Print Works, Inc. v. Apkin (In re Arnold Print
Works, Inc.), 815 F.2d 165 (1st Cir. 1987), cited by the Ninth
Circuit Court of Appeals with approval in Maitland v. Mitchell
(In re Harris Pine Mills), 44 F.3d 1431, 1438 (9th Cir. 1995),
the Court held that an action by a debtor-in-possession to
recover on a post-petition claim was a core proceeding.  The In
re Arnold Print Works court recognized the bankruptcy court's
need to retain jurisdiction over contracts made by trustees
concerning the administration of the bankruptcy estate.  A
contract with a trustee is a contract with the court itself.  Id.
at 169-70.  The court described the bankruptcy court's
significant interest in such contracts:

> With respect to contracts made by trustees, debtors
> in possession and other officers of the bankruptcy
> court, the necessity of the court retaining
> exclusive jurisdiction over matters arising out of
> such contracts is even more pronounced than in the
> case of other matters arising during the
> administration of the bankruptcy estate.  The
> courts have therefore adopted an extreme position
> with respect to this and have ruled that a party
> contracting with an officer of the court in fact
> contracts with the court itself, and by such act
> *subjects himself for the purposes of the contract*

*to the summary jurisdiction of the court.*

Id. at 170 (emphasis original) (quoting In re Alan Wood Steel
Co., 1 B.R. 167, 169 (Bankr. E.D. Pa. 1979)).

The court also discussed Article III fairness concerns.  The
court observed that the bankruptcy court's exercise of
jurisdiction over post-petition contracts with a bankrupt
company's trustee does not produce an unfair result.  Id.  The
court explained:

> Parties who contract with a bankruptcy company's
> trustee or with a debtor-in-possession know that
> they are dealing with an agent responsible to a
> bankruptcy court; that the bankruptcy court would
> resolve subsequent disputes should therefore come
> as no surprise.

Id.

Count 1 of the Complaint seeks enforcement of the
Confidentiality Agreement.  HAL and Mesa entered into the
Confidentiality Agreement pursuant to the bankruptcy court's Plan
Procedures Order.  The Confidentiality Agreement is a post-
petition agreement executed between Mesa and the Trustee.  Both
the Confidentiality Agreement and the bankruptcy court's Plan
Procedures Order expressly retained jurisdiction in the
bankruptcy court.  Every time Mesa accessed the website to obtain
confidential information made available to it under the
Confidentiality Agreement, it was required to agree that it was
subject to the bankruptcy court's jurisdiction.  In sum, the
bankruptcy court has core jurisdiction over HAL's claim for

breach of the Confidentiality Agreement because it is a post-petition agreement with the Trustee and the bankruptcy court and expressly retained jurisdiction over disputes relating to the Confidentiality Agreement.  Mesa cannot claim unfair surprise; rather, it could not expect anything but for the bankruptcy court to resolve this dispute.

Mesa cites to In re Valdez Fisheries to support its argument that the adversary proceeding has no effect on the bankruptcy case and the Court should withdraw the reference.  (Reply at 10.) In In re Valdez Fisheries, the court considered whether the adversary proceeding fell within the close nexus test for "related to" jurisdiction under 28 U.S.C. § 157(a).  In that case, the creditor of a former chapter 11 debtor brought an adversary proceeding to determine the effect of a settlement agreement between the debtor and the creditor.  The bankruptcy court had approved the settlement agreement and had dismissed the chapter 11 bankruptcy proceeding.  In re Valdez Fisheries, 439 F.3d at 547.  The bankruptcy court also entered a final decree closing the bankruptcy and the creditor moved to reopen it.  Id. The settlement agreement provided that the bankruptcy court would have continued jurisdiction over the interpretation of the agreement.  Id.  The district court found that the bankruptcy court, by approving the settlement agreement, retained jurisdiction to interpret it.  Id.

11

On appeal, the Ninth Circuit Court of Appeals first discussed whether the bankruptcy court had "related to" jurisdiction over the creditor's claim – *i.e.*, whether the outcome of the proceedings could conceivably have any effect on the estate being administered in bankruptcy. The court found that the creditor's claim regarding the interpretation of the settlement agreement did not satisfy the "related to" test. The creditor sought clarification as to whether the settlement agreement released the creditor's state court claims against the state. The court found that a determination of the terms of the settlement agreement "could not conceivably 'alter the debtor's rights, liabilities, options, or freedom of action . . . [or] in any way impact[ ] upon the handling and administration of the bankrupt estate.'" Id. at 548 (quoting In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988)).

Significantly, however, the court noted that had the bankruptcy court not dismissed the bankruptcy proceeding, it could have, in its discretion, retained jurisdiction. Id. at 548-49.

The appellate court also considered the effect of the retention of jurisdiction provision in the settlement agreement. The court found that the language in the settlement agreement alone was not sufficient for the court to retain jurisdiction. The court order approving the settlement agreement did *not* retain

12

jurisdiction.  In re Valdez Fisheries, 439 F.3d at 549.

In contrast, the April 7, 2004 bankruptcy court Plan
Procedures Order that put the procedures for the confidentiality
agreement in place expressly provided for retention of
"jurisdiction to interpret and enforce the provisions of this
Order and to resolve any disputes arising out of the various
rights and obligations set forth in this Order." (Plan Procedures
Order at ¶ 11.)

Also, unlike the facts in In re Valdez Fisheries, the
bankruptcy court has not dismissed HAL's bankruptcy proceeding
and the case remains open.  The bankruptcy court has recently
entered a scheduling order and is prepared to entertain the
adversary proceeding.  (See Plaintiff's Opp. at Exhibit D
"Scheduling Order".)

**B.   Turnover Claim Under 11 U.S.C. § 542(a) (Count 2) Is a
Core Proceeding**

HAL's turnover claim under 11 U.S.C. § 542(a) is within the
Court's core jurisdiction because it arises under Title 11.  See
28 U.S.C. § 157(b)(2)(E) ("orders to turn over property of the
estate" are core proceedings).  Mesa contends that HAL's turnover
claim fails as a matter of law because the bankruptcy court has
already confirmed the reorganization plan.  Mesa contends that a
turnover claim requires return of the property to the trustee,
but once the plan has been confirmed and the estate ceases to
exist there can be no turnover claim.  See 11 U.S.C. § 541(a).

13

Mesa filed a motion to dismiss in the bankruptcy court on this ground.

This Court need not determine whether HAL has asserted a viable turnover claim.  It is sufficient that HAL has alleged a turnover claim. The turnover claim arises under title 11 and the bankruptcy court can determine the validity of HAL's turnover claim.  Since the Court's oral ruling on Mesa's Motion to Withdraw the Reference, the bankruptcy court, on June 30, 2006, denied Mesa's motion to dismiss the turnover claim.

## II.  The Bankruptcy Court Has Jurisdiction Over Mesa's Counterclaim

### A.    The Bankruptcy Court Has Supplemental Jurisdiction Over Mesa's Counterclaim

"Pursuant to 28 U.S.C. § 1367, district courts have 'supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'"  In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005) (citation omitted).

Here, HAL's filing of the Complaint in the adversary proceeding is the primary basis for Mesa's antitrust counterclaim.  Mesa contends that HAL filed the lawsuit containing false allegations regarding its alleged breach of the Confidentiality Agreement in an effort to stop Mesa from

14

competing in Hawaii's inter-island air travel market.  Mesa's
Counterclaim is directly related to, and inextricably intertwined
with, the claims in HAL's Complaint over which the bankruptcy
court has core jurisdiction.  If the bankruptcy court concludes
that Mesa did, in fact, breach the Confidentiality Agreement,
then Mesa's sham lawsuit theory will be difficult to prove,
eliminating much of the basis for Mesa's Counterclaim.  As such,
the bankruptcy court has discretion to exercise supplemental
jurisdiction over Mesa's Counterclaim, a non-core proceeding.
See In re Pegasus Gold Corp., 394 F.3d at 1194-95 (bankruptcy
court had supplemental jurisdiction where remaining claims
involved a "common nucleus of operative facts" and would
ordinarily be expected to be resolved in one judicial
proceeding); Shugrue v. Continental Airlines, Inc., 977 F. Supp.
280, 289 (S.D.N.Y. 1997) (Section 1367 permits district courts to
exercise supplemental jurisdiction over claims related to claims
over which they have original jurisdiction); Kinney v. Higher
Education Assistance Foundation (In re Kinney), 114 B.R. 670, 672
(Bankr. D. Neb. 1990) (subject matter jurisdiction extended to
counterclaim because it was sufficiently factually related to
jurisdiction-conferring claim).

## III. Withdrawal of the Reference Is Not Mandatory

Section 157(d) requires the withdrawal of a reference in
certain instances.  In this regard, Section 157(d) provides:

15

> The district court shall, on timely motion of a
> party, so withdraw a proceeding if the court
> determines that resolution of the proceeding
> requires consideration of both title 11 and other
> laws of the United States regulating organizations
> or activities affecting interstate commerce.

The relevant inquiry is whether the proceeding also requires
consideration of "other laws of the United States regulating
organizations or activities affecting interstate commerce" and,
if so, whether the district court should withdraw the reference.

The law in the Ninth Circuit Court of Appeals is unclear as
to the exact standard courts should apply in determining whether
withdrawal is mandatory.  The majority of courts have adopted a
"substantial and material" standard which the Ninth Circuit Court
of Appeals has approved in dicta.  Under that standard,
"[w]ithdrawal is mandatory only 'if resolution of the issues
requires substantial and material consideration of non-bankruptcy
code statutes.'"  Segal v. California Energy Development Corp.,
167 B.R. 667, 670 (D. Utah 1994)(citation omitted); see Security
Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999, 1008, n.4
(9th Cir. 1997) ("By contrast, permissive withdrawal does not
hinge on the presence of substantial and material questions of
federal law"); In re Ponce Marine Farm, Inc., 172 B.R. 722, 724
(D. P.R. 1994) ("mandatory withdrawal of reference is proper only
where resolution of the adversary proceeding involves substantial
and material consideration of non-bankruptcy federal statutes").
The substantial and material consideration standard "is founded

on principled decision-making which enables bankruptcy courts to apply established legal standards in the same manner as district courts." Segal, 167 B.R. at 670.  The substantial and material consideration standard "avoids automatic withdrawal of matters capable of such straightforward treatment by the court most familiar with the facts" and serves judicial economy.  Id.  "Withdrawal is mandatory only when the non-code issues dominate the bankruptcy issues."  In re Ponce Marine Farm, Inc., 172 B.R. at 724.

In City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2nd Cir. 1991), the court distinguished between cases involving the significant interpretation, as opposed to the simple application, of federal laws.  Cases involving significant interpretation require mandatory withdrawal, while those involving simple application do not.  As at least one district court has noted, "[t]he emerging trend in cases applying § 157(d) indicates that withdrawal is mandatory only if the Bankruptcy Court is required to interpret an uncertain legal standard, as opposed to applying fixed legal standards to a given set of facts." Dow Jones/Group W Television v. NBC, Inc., 127 B.R. 3, 4 (S.D.N.Y. 1991).  In NBC, Inc., the court held that it was not required to withdraw the reference because the case appeared to require the mere application of antitrust principles to new facts.  Id. at 5.

The Counterclaim involves consideration of antitrust and

17

unfair competition laws.  As set forth in HAL's opposition
memorandum, the antitrust and other federal law issues in this
case appear to be straightforward and not matters of first
impression.  (Plaintiff's Opp. at 12-16.)  Non-bankruptcy code
issues do not dominate the case.  Rather, both counts in the
Complaint are core proceedings.  Mesa's Counterclaim is
intertwined with the allegations in the Complaint.  Indeed, the
primary basis for Mesa's Counterclaim is that the Complaint
itself is a sham in violation of antitrust laws.  Moreover, Mesa
has not identified those portions of the antitrust laws which it
contends will require substantial and material consideration.
Segal, 167 B.R. at 671.  As such, mandatory withdrawal is not
required.  See In re Hvide Marine Inc., 248 B.R. 841, 844 (M.D.
Fla. 2000) (denying withdrawal of reference under mandatory
provision where alleged unlawful monopolistic activities appear
to be susceptible to a straightforward application of well-
settled non-bankruptcy federal law).

**IV.  Mesa Has Not Demonstrated Cause for Permissive Withdrawal of
the Reference**

Section 157(d) also provides for the district court's
discretionary withdrawal of a reference.  With regard to a
permissive withdrawal of reference, Section 157(d) provides:

> The district court may withdraw, in whole or in
> part, any case or proceeding referred under this
> section, on its own motion or on timely motion of
> any party, for cause shown.

18

Permissive withdrawal is permitted only in a limited number of circumstances.  See In re Ponce Marine Farm, Inc., 172 B.R. at 724 n.2 (citing U.S. v. Kaplan, 146 B.R. 500 (D. Mass. 1992)). In determining whether cause for permissive withdrawal exists, the Court may consider: (1) whether the proceeding is core or non-core; (2) whether the claim is legal or equitable; (3) the most efficient use of judicial resources; (4) whether the claim is triable by jury; (5) reduction of forum shopping; (6) conversion of estate and non-debtor resources; and (7) uniformity of bankruptcy administration.   See Security Farms, 124 F.3d at 1008.

The determination of whether claims are core or non-core is not dispositive of a motion to withdraw a reference, but characterization of the claims as core or non-core is useful before considering the other factors.  As discussed above, both claims in the complaint – for breach of the Confidentiality Agreement and for turnover under 11 U.S.C. § 542(a) – are matters within the bankruptcy court's core jurisdiction.  Mesa's Counterclaim is not within the bankruptcy court's core jurisdiction, but it is directly related to the claims in the Complaint which are within the bankruptcy court's core jurisdiction.  The existence of core matters weighs in favor of resolution of the adversary proceeding by the bankruptcy court.

The other relevant factors also weigh against permissive

withdrawal.  Resolution of this action by the bankruptcy court is the most efficient use of judicial resources.  The bankruptcy court is already familiar with many of the circumstances relevant to the instant case.  The bankruptcy court entered the Plan Procedures Order under which Mesa was obligated to execute the Confidentiality Agreement.  The bankruptcy court is in the best position to interpret the Confidentiality Agreement and to assess the validity of HAL's turnover claim under 11 U.S.C. § 542(a). The bankruptcy court is also familiar with HAL's operations within Hawaii which are central to Mesa's Counterclaim.  See Vista Metals Corp. v. Metal Brokers Int'l, Inc., 161 B.R. 454, 458 (E.D. Wis. 1993) (notwithstanding jury trial rights if the action goes to trial, where bankruptcy judge had "significant exposure" to many relevant factual and legal issues through bankruptcy proceedings, "he can best address [this particular adversary proceeding] while ensuring the uniform, efficient administration of the entire bankruptcy estate, and that this matter will proceed through bankruptcy with minimal delay").

Denying the motion for withdrawal the reference similarly promotes the uniformity of bankruptcy administration.  The bankruptcy court has an interest in interpreting its own orders.

Allowing this case to proceed in the bankruptcy court will also minimize delay and the cost to the parties.  At the time Mesa filed its motion for withdrawal of reference, the bankruptcy

20

court had already held a scheduling conference and entered a scheduling order which provides for the trial to begin on April 2, 2007.

Denying the motion for withdrawal of reference discourages forum shopping. Prevention of forum shopping may be promoted by declining to withdraw the reference before it is necessary. Courts have cautioned that the discretion to withdraw a reference to the bankruptcy court should be "employ[ed] [] judiciously in order to prevent [withdrawal] from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court." Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp), 136 B.R. 59, 61 (S.D.N.Y. 1992) (citation omitted); see also In re Commercial Financial Services, Inc., 239 B.R. 586, 597 (Bankr. N.D. Okla. 1999)(quoting In re Kenai Corp, 136 B.R. at 61). A party may engage in forum shopping by seeking to benefit from a different judge's understanding and application of the same laws. In re Kenai Corp, 136 B.R. at 61; In re Commercial Financial Services, Inc., 239 B.R. at 597.

HAL's claims are core proceedings. Mesa chose to file a permissive counterclaim in the bankruptcy court rather than in this Court. Mesa should not be permitted to use its permissive counterclaim to avoid adjudication of HAL's core claims by the bankruptcy court. In light of the Bankruptcy Judge's familiarity with many of the relevant facts and issues, the bankruptcy court

is in the best position to oversee the adversary proceeding.  See In re Kenai Corp, 136 B.R. at 61.

Finally, Mesa's jury trial demand does not weigh in favor of withdrawal of the reference at this time.  Even where the presence of non-core claims and a jury demand indicate that the reference to the bankruptcy court ultimately may have to be withdrawn, a district court may exercise its discretion not to withdraw the reference immediately where, for example, the bankruptcy court already is familiar with the relevant facts and issues and the issues triable by a jury are not yet ripe for trial.  See, e.g., In re Keene Corporation, 182 B.R. 379, 385 (S.D.N.Y. 1995); Barlow & Peek, Inc. v. Manke Truck Lines, Inc., 163 B.R. 177, 179 (D. Nev. 1993); In re Orion Pictures Corp., 4 F.3d 1095, 1101-1102 (2nd Cir. 1993); In re Delaware & Hudson Railway Co., 122 B.R. 887, 897 (D. Del. 1991).

Although courts uniformly acknowledge the relevance of a party's right to a jury trial in district court in deciding whether to withdraw a reference to the bankruptcy court, a number of courts have denied a party's request for immediate withdrawal of a reference where the basis of the request is a party's entitlement to a jury trial.  See, e.g., In re Apponline.Com., Inc., 303 B.R. 723, 727 (E.D.N.Y. 2004) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along

toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme.") (quoting <u>In re Kenai Corp.</u>, 136 B.R. at 61); <u>In re Commercial Financial Services, Inc.</u>, 239 B.R. at 597 (same); <u>In re Hardesty</u>, 190 B.R. 653, 656 (D. Kan. 1995) ("Even if a jury trial may constitute cause for withdrawal, the district court may decline to withdraw the reference until the case is ready for trial."); <u>Barlow & Peek, Inc.</u>, 163 B.R. at 179 ("The filing of a jury demand in a non core proceeding which is related to a bankruptcy case should not result in the District Judge on a knee jerk basis withdrawing the order of reference.").

The instant case is set to be tried in April of 2007. It is possible that some or all of the parties' claims will be disposed of by that date through dispositive motions or settlement. If the case proceeds to the trial stage, Mesa may renew its motion at that time.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mesa's Motion to Withdraw the Reference (Doc. 1) is **DENIED.**

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 31, 2006.



   /s/ Helen Gillmor
Chief United States District Judge

<u>Hawaiian Airlines, Inc. v. Mesa Air Group, Inc</u>.; Civil No. 06-00154 HG-BMK; **ORDER DENYING MOTION TO WITHDRAW REFERENCE**